UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | **SEALED INDICTMENT** |
| v. | 23 Cr. |
| XIANGJIANG QIAO,<br>a/k/a "Joe Hansen," | |
| Defendant. | |

**2ξ CRIM 239**

**COUNT ONE**
**(Conspiracy to Violate IEEPA)**

The Grand Jury charges:

**Overview**

1.      XIANGJIANG QIAO, a/k/a "Joe Hansen," the defendant, is a national of the

People's Republic of China ("China").  From in or about March 2019, up to and including in or

about September 2022, QIAO participated in a scheme to use the U.S. financial system to conduct

transactions through Sinotech Dalian Carbon and Graphite Manufacturing Corporation ("Sinotech

Dalian"), a China-based company of which QIAO is an employee, for the benefit of a purported

Iranian entity, in violation of U.S. sanctions against Iran.  QIAO is an associate of Li Fangwei,

a/k/a "Karl Lee" ("Lee"), who is charged in this District with, among other offenses, violating U.S.

sanctions against Iran. *See United States v. Li Fangwei*, S1 14 Cr. 144 (S.D.N.Y.).

2.      In 2014, the U.S. Department of the Treasury's Office of Foreign Assets Control

("OFAC") added Sinotech Dalian to its List of Specially Designated Nationals and Blocked

Persons (the "SDN List"), pursuant to Executive Order 13382.  In publicly announcing the

sanctions, OFAC explained that Sinotech Dalian comprised part of a network of China-based

entities that Lee managed and used to proliferate weapons of mass destruction ("WMDs"), and

specifically to aid Iranian ballistic missile procurement. Sinotech Dalian is itself a front company for another China-based entity that Lee managed, LIMMT Economic and Trade Company, Ltd., which OFAC designated as an SDN in 2009 pursuant to Executive Order 13382 for its role in providing goods, including graphite, to support Iran's ballistic missile program. Sinotech Dalian's inclusion on the SDN List precluded it from engaging in commercial transactions with U.S. persons or entities and from using the U.S. financial system to conduct transactions, without first obtaining a license or authorization from OFAC.

3.     In willful violation of those sanctions, XIANGJIANG QIAO, a/k/a "Joe Hansen," the defendant, participated in a scheme to use Sinotech Dalian to conduct transactions with a U.S. financial institution as part of an effort to provide isostatic graphite, a material used in the production of WMDs, to Iran. Neither QIAO nor Sinotech Dalian sought a license or authorization from OFAC. In an effort to evade the prohibition on Sinotech Dalian's use of the U.S. financial system, QIAO used a bank account in the name of a front company to conceal the role of Sinotech Dalian in the transactions for the sale of the isostatic graphite, which QIAO believed was destined for an Iranian entity.

## The International Emergency Economic Powers Act

4.     The International Emergency Economic Powers Act ("IEEPA"), codified at Title 50, United States Code, Sections 1701-1708, confers upon the President authority to deal with unusual and extraordinary threats to the national security and foreign policy of the United States. Section 1705 provides, in part, that "[i]t shall be unlawful for a person to violate, attempt to violate, conspire to violate, or cause a violation of any license, order, regulation, or prohibition issued under this title." 50 U.S.C. § 1705(a).

2

5.     Beginning with Executive Order 12170, issued on November 14, 1979, the President has found that "the situation in Iran constitutes an unusual and extraordinary threat to the national security, foreign policy and economy of the United States" and declared "a national emergency to deal with that threat." That finding of a national emergency was most recently continued on November 8, 2022. The President has declared additional national emergencies with respect to the actions and policies of the Government of Iran that also remain in effect.

## The Iranian Transactions and Sanctions Regulations

6.     On March 15 and May 6, 1995, the President issued Executive Orders 12957 and 12959, pursuant to IEEPA, prohibiting, among other things, the exportation, reexportation, sale, or supply, directly or indirectly, to Iran of any goods, technology, or services from the United States or by a U.S. person, and on August 19, 1997, issued Executive Order 13059 clarifying the previous orders. These Executive Orders authorized the U.S. Secretary of the Treasury to promulgate rules and regulations necessary to carry out the Executive Orders. Pursuant to this authority, the Secretary of the Treasury promulgated the Iranian Transactions Regulations (renamed in 2012, the Iranian Transactions and Sanctions Regulations, the "ITSR") implementing the sanctions imposed by these Executive Orders.

7.     The ITSR prohibit, among other things, the exportation, reexportation, sale, or supply, directly or indirectly, from the United States, or by a U.S. person, of any goods, technology, or services to Iran or the Government of Iran (with certain limited exceptions), including the exportation, reexportation, sale, or supply of goods, technology, or services to a third country knowing or having reason to know that such goods, technology, or services are intended for Iran or the Government of Iran, without a license from OFAC. *See* 31 C.F.R. § 560.204.

8.      The ITSR also prohibit the use of U.S. financial institutions to facilitate transactions with or provide services to Iran-based entities.  In particular, the ITSR provide that the provision, directly or indirectly, to Iran or the Government of Iran of financial services, including banking services, is a prohibited export, reexport, sale, or supply of financial services to Iran or the Government of Iran.  *See* 31 C.F.R. § 560.427(a).

9.      The ITSR further prohibit transactions that evade or avoid, have the purpose of evading or avoiding, cause a violation of, or attempt to violate the ITSR.  *See* 31 C.F.R. § 560.203.

### The WMD Proliferators Sanctions Regulations

10.      On November 14, 1994, the President issued Executive Order 12938, finding "that the proliferation of nuclear, biological, and chemical weapons ('weapons of mass destruction') and of the means of delivering such weapons, constitutes an unusual and extraordinary threat to the national security, foreign policy, and economy of the United States, and [declaring] a national emergency to deal with that threat."

11.      Thereafter, on June 28, 2005, the President issued Executive Order 13382 to target proliferators of WMDs and their support networks and deny designated WMD proliferators access to the U.S. financial and commercial systems.  Pursuant to that authority, the Secretary of Treasury promulgated the "Weapons of Mass Destruction Proliferators Sanctions Regulations" (the "WMD Sanctions Regulations"), 31 C.F.R. § 544.201 *et seq.*, which authorized OFAC to sanction individuals and entities facilitating the proliferation of WMDs by placing such individuals or entities on the SDN List, *see* 31 C.F.R. § 544.201(a)(2).

12.      The WMD Sanctions Regulations prohibit transactions or dealings by any U.S. person or within the United States with individuals and entities that have been placed on the SDN List, except as authorized or licensed by OFAC.  *See* 31 C.F.R. § 544.201(b).  These prohibitions

apply to services, such that the WMD Sanctions Regulations prohibit the provision of services, including financial services, by U.S. persons or within the United States to a person or entity on the SDN List. *See* 31 C.F.R. § 544.405. The WMD Sanctions Regulations further prohibit attempts and conspiracies to violate the WMD Sanctions Regulations, or any transaction by a U.S. person or within the United States that evades or avoids, or has the purpose of evading or avoiding, any of the prohibitions set forth in the WMD Sanctions Regulations. *See* 31 C.F.R. § 544.205.

## STATUTORY ALLEGATIONS

13. From at least in or about 2019, up to and including in or about September 2022, in the Southern District of New York, China, and elsewhere, and in an offense begun and committed out of the jurisdiction of any particular state or District, XIANGJIANG QIAO, a/k/a "Joe Hansen," the defendant, and others known and unknown, at least one of whom is expected to be first brought to and arrested in the Southern District of New York, knowingly and willfully combined, conspired, confederated, and agreed together and with each other to violate, and to cause a violation of, licenses, orders, regulations, and prohibitions issued under IEEPA.

14. It was a part and an object of the conspiracy that XIANGJIANG QIAO, a/k/a "Joe Hansen," the defendant, and others known and unknown, would and did provide and cause others to provide services to Iran and to the Government of Iran from the United States and by U.S. persons, without first obtaining the required approval of OFAC; and to evade the requirements of U.S. law with respect to the provision of services to Iran and to the Government of Iran from the United States and by U.S. persons, in violation of Executive Orders 12959 and 13059, and Title 31, Code of Federal Regulations, Sections 560.203, 560.204, and 560.427.

15. It was further a part and an object of the conspiracy that XIANGJIANG QIAO, a/k/a "Joe Hansen," the defendant, and others known and unknown, would and did make and cause

5

the making by a U.S. person and within the United States of a contribution and provision of funds, goods, and services by, to, and for the benefit of any individual or entity whose property and interests in property are blocked pursuant to the WMD Sanctions Regulations, namely, Sinotech Dalian, without first obtaining the required approval of OFAC; and to evade the requirements of U.S. law with respect to transactions and dealings with Sinotech Dalian, in violation of Executive Order 13382 and Title 31, Code of Federal Regulations, Sections 544.201, 544.205, and 544.405.

## Overt Acts

16.     In furtherance of the conspiracy and to effect the illegal objects thereof, XIANGJIANG QIAO, a/k/a "Joe Hansen," the defendant, and others known and unknown, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a.      On or about September 1, 2020, QIAO caused a wire transfer of funds in the amount of approximately $6,255 to be sent from a bank account in the Southern District of New York to a bank account in China in the name of Lexing International Trade Co., Ltd ("Lexing"), a front company for Sinotech Dalian, to facilitate the provision of isostatic graphite to a purported Iranian entity (the "2020 Wire Transfer").

b.      On or about September 23, 2021, QIAO caused a wire transfer of funds in the amount of approximately $8,840 to be sent from a bank account in the Southern District of New York to a bank account in China in the name of Lexing, to facilitate the provision of isostatic graphite to a purported Iranian entity (the "2021 Wire Transfer").

(Title 50, United States Code, Section 1705; Title 18, United States Code, Section 3238; Executive Orders 12959, 13059, and 13382; and Title 31, Code of Federal Regulations, Sections 544.201, 544.205, 544.405, 560.203, 560.204, and 560.427.)

6

## COUNT TWO
### (IEEPA Violation)

The Grand Jury further charges:

17.     The allegations contained in paragraphs 1 through 12 and 16 of this Indictment are repeated and realleged as if fully set forth herein.

18.     In or about 2020, in the Southern District of New York, China, and elsewhere, and in an offense begun and committed out of the jurisdiction of any particular state or District, XIANGJIANG QIAO, a/k/a "Joe Hansen," the defendant, who is expected to be first brought to and arrested in the Southern District of New York, knowingly and willfully violated, attempted to violate, and caused a violation of a license, order, regulation, and prohibition in and issued under IEEPA, to wit, QIAO, through his participation in, among other things, the 2020 Wire Transfer, (i) attempted to provide and cause others to provide financial services to Iran and to the Government of Iran from the United States and by U.S. persons, without first obtaining the required approval of OFAC; (ii) made and caused the making by a U.S. person and within the United States of a contribution and provision of financial services to and for the benefit of an entity whose property and interests in property are blocked pursuant to the WMD Sanctions Regulations, namely, Sinotech Dalian, without first obtaining the required approval of OFAC; and (iii) evaded and avoided, and attempted to evade and avoid, the requirements of U.S. law with respect to the provision of services to Iran and to the Government of Iran from the United States and by U.S. persons and with respect to transactions and dealings with Sinotech Dalian.

(Title 50, United States Code, Section 1705; Title 18, United States Code, Sections 2 and 3238; Executive Orders 12959, 13059, and 13382; and Title 31, Code of Federal Regulations, Sections 544.201, 544.205, 544.405, 560.203, 560.204, and 560.427.)

7

## COUNT THREE
### (IEEPA Violation)

The Grand Jury further charges:

19.     The allegations contained in paragraphs 1 through 12 and 16 of this Indictment are repeated and realleged as if fully set forth herein.

20.     In or about 2021, in the Southern District of New York, China, and elsewhere, and in an offense begun and committed out of the jurisdiction of any particular state or District, XIANGJIANG QIAO, a/k/a "Joe Hansen," the defendant, who is expected to be first brought to and arrested in the Southern District of New York, knowingly and willfully violated, attempted to violate, and caused a violation of a license, order, regulation, and prohibition in and issued under IEEPA, to wit, QIAO, through his participation in, among other things, the 2021 Wire Transfer, (i) attempted to provide and cause others to provide financial services to Iran and to the Government of Iran from the United States and by U.S. persons, without first obtaining the required approval of OFAC; (ii) made and caused the making by a U.S. person and within the United States of a contribution and provision of financial services to and for the benefit of an entity whose property and interests in property are blocked pursuant to the WMD Sanctions Regulations, namely, Sinotech Dalian, without first obtaining the required approval of OFAC; and (iii) evaded and avoided, and attempted to evade and avoid, the requirements of U.S. law with respect to the provision of services to Iran and to the Government of Iran from the United States and by U.S. persons and with respect to transactions and dealings with Sinotech Dalian.

(Title 50, United States Code, Section 1705; Title 18, United States Code, Sections 2 and 3238; Executive Orders 12959, 13059, and 13382; and Title 31, Code of Federal Regulations, Sections 544.201, 544.205, 544.405, 560.203, 560.204, and 560.427.)

8

## COUNT FOUR
### (Conspiracy to Commit Bank Fraud)

The Grand Jury further charges:

21.     The allegations contained in paragraphs 1 through 12 and 16 of this Indictment are repeated, realleged, and incorporated by reference as if fully set forth herein.

22.     From at least in or about 2019, up to and including in or about September 2022, in the Southern District of New York, China, and elsewhere, and in an offense begun and committed out of the jurisdiction of any particular state or District, XIANGJIANG QIAO, a/k/a "Joe Hansen," the defendant, and others known and unknown, at least one of whom is expected to be first brought to and arrested in the Southern District of New York, knowingly and willfully combined, conspired, confederated, and agreed together and with each other to commit bank fraud, in violation of Title 18, United States Code, Section 1344.

23.     It was a part and an object of the conspiracy that XIANGJIANG QIAO, a/k/a "Joe Hansen," the defendant, and others known and unknown, would and did knowingly execute and attempt to execute a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation ("FDIC"), and to obtain moneys, funds, credits, assets, securities, and other property owned by and under the custody and control of such financial institution, by means of false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344.

(Title 18, United States Code, Sections 1349 and 3238.)

9

## COUNT FIVE
### (Attempted Bank Fraud)

The Grand Jury further charges:

24.     The allegations contained in paragraphs 1 through 12 and 16 of this Indictment are repeated and realleged as if fully set forth herein.

25.     In or about 2020, in the Southern District of New York, China, and elsewhere, and in an offense begun and committed out of the jurisdiction of any particular state or District, XIANGJIANG QIAO, a/k/a "Joe Hansen," the defendant, who is expected to be first brought to and arrested in the Southern District of New York, knowingly attempted to execute a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the FDIC, and to obtain moneys, funds, credits, assets, securities, and other property owned by and under the custody and control of such financial institution, by means of false and fraudulent pretenses, representations, and promises, and aided and abetted the same; to wit, QIAO, through the 2020 Wire Transfer, attempted to cause, by deceptive means, a U.S. financial institution to conduct a financial transaction with Sinotech Dalian, an SDN, on behalf of and for the benefit of a purported Iranian entity, using money and property owned by and under the custody and control of such U.S. financial institution.

(Title 18, United States Code, Sections 1344, 1349, 3238, and 2.)

## COUNT SIX
### (Attempted Bank Fraud)

The Grand Jury further charges:

26.     The allegations contained in paragraphs 1 through 12 and 16 of this Indictment are repeated and realleged as if fully set forth herein.

27.     In or about 2021, in the Southern District of New York, China, and elsewhere, and

in an offense begun and committed out of the jurisdiction of any particular state or District, XIANGJIANG QIAO, a/k/a "Joe Hansen," the defendant, who is expected to be first brought to and arrested in the Southern District of New York, knowingly attempted to execute a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the FDIC, and to obtain moneys, funds, credits, assets, securities, and other property owned by and under the custody and control of such financial institution, by means of false and fraudulent pretenses, representations, and promises, and aided and abetted the same; to wit, QIAO, through the 2021 Wire Transfer, attempted to cause, by deceptive means, a U.S. financial institution to conduct a financial transaction with Sinotech Dalian, an SDN, on behalf of and for the benefit of a purported Iranian entity using money and property owned by and under the custody and control of such U.S. financial institution.

(Title 18, United States Code, Sections 1344, 1349, 3238, and 2.)

## COUNT SEVEN
### (Conspiracy to Commit Money Laundering)

The Grand Jury further charges:

28.     The allegations contained in paragraphs 1 through 12 and 16 of this Indictment are repeated, realleged, and incorporated by reference as if fully set forth herein.

29.     From at least in or about 2019, up to and including in or about September 2022, in the Southern District of New York, China, and elsewhere, and in an offense begun and committed out of the jurisdiction of any particular state or District, XIANGJIANG QIAO, a/k/a "Joe Hansen," the defendant, and others known and unknown, at least one of whom is expected to be first brought to and arrested in the Southern District of New York, knowingly and intentionally combined, conspired, confederated, and agreed together and with each other to commit money laundering, in violation of Title 18, United States Code, Section 1956(a)(2)(A).

11

30.     It was a part and an object of the conspiracy that XIANGJIANG QIAO, a/k/a "Joe Hansen," the defendant, and others known and unknown, would and did transport, transmit, and transfer, and attempt to transport, transmit, and transfer, monetary instruments and funds from a place in the United States to and through a place outside the United States, with the intent to promote the carrying on of specified unlawful activity, to wit, (a) the conspiracy to violate and violations of IEEPA as charged in Counts One, Two, and Three of this Indictment, and (b) the bank fraud offenses as charged in Counts Four, Five, and Six of this Indictment, in violation of Title 18, United States Code, Section 1956(a)(2)(A).

(Title 18, United States Code, Sections 1956(h) and 3238.)

## COUNT EIGHT
### (Money Laundering)

The Grand Jury further charges:

31.     The allegations contained in paragraphs 1 through 12 and 16 of this Indictment are repeated, realleged, and incorporated by reference as if fully set forth herein.

32.     In or about 2020, in the Southern District of New York, China, and elsewhere, and in an offense begun and committed out of the jurisdiction of any particular state or District, XIANGJIANG QIAO, a/k/a "Joe Hansen," the defendant, who is expected to be first brought to and arrested in the Southern District of New York, knowingly transported, transmitted, and transferred, and attempted to transport, transmit, and transfer, monetary instruments and funds from a place in the United States to and through a place outside the United States, and aided and abetted the same, with the intent to promote the carrying on of specified unlawful activity, namely, (a) the conspiracy to violate and violations of IEEPA as charged in Counts One, Two, and Three

12

of this Indictment, and (b) the bank fraud offenses as charged in Counts Four, Five, and Six of this Indictment, to wit, QIAO caused the 2020 Wire Transfer.

(Title 18, United States Code, Sections 1956(a)(2)(A), 2, and 3238.)

## COUNT NINE
### (Money Laundering)

The Grand Jury further charges:

33.     The allegations contained in paragraphs 1 through 12 and 16 of this Indictment are repeated, realleged, and incorporated by reference as if fully set forth herein.

34.     In or about 2021, in the Southern District of New York, China, and elsewhere, and in an offense begun and committed out of the jurisdiction of any particular state or District, XIANGJIANG QIAO, a/k/a "Joe Hansen," the defendant, who is expected to be first brought to and arrested in the Southern District of New York, knowingly transported, transmitted, and transferred, and attempted to transport, transmit, and transfer, monetary instruments and funds from a place in the United States to and through a place outside the United States, and aided and abetted the same, with the intent to promote the carrying on of specified unlawful activity, namely, (a) the conspiracy to violate and violations of IEEPA as charged in Counts One, Two, and Three of this Indictment, and (b) the bank fraud offenses as charged in Counts Four, Five, and Six of this Indictment, to wit, QIAO caused the 2021 Wire Transfer.

(Title 18, United States Code, Sections 1956(a)(2)(A), 2, and 3238.)

## FORFEITURE ALLEGATION
### (Counts One, Two, and Three)

35.     As a result of committing the IEEPA offenses alleged in Counts One, Two, and Three of this Indictment, XIANGJIANG QIAO, a/k/a "Joe Hansen," the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28,

13

United States Code, Section 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offenses alleged in Counts One, Two, and Three, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

## FORFEITURE ALLEGATION
### (Counts Four, Five, and Six)

36.     As a result of committing the bank fraud offenses alleged in Counts Four, Five, and Six of this Indictment, XIANGJIANG QIAO, a/k/a "Joe Hansen," the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2)(A), any and all property constituting, or derived from, proceeds the defendant obtained directly or indirectly, as a result of the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commissions of said offenses.

## FORFEITURE ALLEGATION
### (Counts Seven, Eight, and Nine)

37.     As a result of committing the money laundering offenses alleged in Counts Seven, Eight, and Nine of this Indictment, XIANGJIANG QIAO, a/k/a "Joe Hansen," the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any and all property, real and personal, involved in said offenses, or any property traceable to such property, including but not limited to a sum of money in United States currency representing the amount of property involved in said offenses.

## Substitute Assets Provision

38.     If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    a) cannot be located upon the exercise of due diligence;

14

b) has been transferred or sold to, or deposited with, a third person;

c) has been placed beyond the jurisdiction of the court;

d) has been substantially diminished in value; or

e) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Sections 981 and 982; Title 21, United States Code, Section 853; and Title 28, United States Code, Section 2461.)

_____
Foreperson

DAMIAN WILLIAMS

True Bill presented. ✓

No Wheel out ✓
1 Arrest Warrant ✓